Darst and Jones v. Trammell.

DARST AND JONES V. HENRY TRAMMELL.

| 27 | 129 |
| 81 | 420 |

That a debtor cannot by fraudulent devices, or cunning expedients, retain his property against his creditors after it has been abandoned as his homestead, merely because it was secured to him as such at one time, is much too clear for argument.

Where, in an action of trespass to try title, it was charged that the vendor of the defendants had made a sham sale of his homestead for the fraudulent purpose of protecting and covering the land from his creditors; it was error to exclude from the jury evidence tending to prove the allegation.

In such an action, a bond for title to the land in controversy, executed to a third party who was not shown to have any connection with it by title or possession, is not admissible in evidence to prove an outstanding title; nor is parol testimony admissible to prove an outstanding title. There is nothing in this case to take it out of the general rule, which requires the title to land to be evidenced by written instruments, and that the best evidence by which a matter is susceptible of proof, is alone admissible.

APPEAL from Gonzales. Tried below before the Hon. Fielding Jones.

This was a suit of trespass to try title brought by the appellants, Darst and Jones, against the appellee, Henry Trammell, to recover a labor of land, and for damages. Plaintiffs allege that they became seized and possessed of the land by purchase at a sale made by the sheriff of Gonzales county, on the 7th day of September, 1858, by virtue of an execution regularly issued from the District Court of said county, on the 5th day of May, 1858, and levied upon said land as the property of Richard H. Bass, on the 16th day of August, 1858, to satisfy a judgment, valid, subsisting, and then unpaid, rendered in said court on the 10th day of October, 1856, wherein Susan Clark was plaintiff, and said Richard H. Bass and others were defendants, as evidenced by the deed of the sheriff therefor filed with the petition.

The defendants answered, alleging that on the 12th day of April, 1858, and for a long time immediately preceding that date, the land claimed by plaintiffs was the homestead of Richard H. Bass; that said Bass and family were residing there; that the said homestead at that time was free and clear from all incum-

9*

brances ; that Bass and wife had the right to sell the same ; that defendant on the 12th day of April, 1858, purchased the same from said Bass and wife for a good and valuable consideration in good faith, and took possession of the same.

Plaintiffs, in an amended petition, denied that the land sued for was the homestead of Richard Bass at the time of said sale to defendant, or that any homestead privileges or exemptions were attached to said tract of land.  They charged that at the time the judgment mentioned in the original petition was rendered, and at the time the pretended sale to said defendant was made, the said Bass and family were living on an entirely different and separate tract of land, upon which was the dwelling house and out houses of said Bass and family.  They further charged that at the time of said pretended sale by the said Bass and wife to said defendant, the said Bass sold to the defendant 840 acres, lying adjoining and contiguous to said tract ; that said judgment was an existing lien upon said tract at the time of said purchase, of which the defendant had actual and constructive notice.  He further charged that at the time of said pretended sale from said Bass and wife, the said Bass was greatly involved in debt ; that there were numerous judgments against him, all of which was publicly known ; that it was notorious throughout the whole country that said Bass was greatly harrassed with debt and generally believed to be insolvent ; that defendant was well acquainted with all these facts, and yet for the purpose of aiding, assisting and abetting the said Bass in his fraudulent purposes, did combine and confederate with the said Bass to swindle and defraud his creditors ; that the said purchase from said Bass and wife by said defendant was a sham sale and a fraudulent transaction, got up by the said parties for the purpose of avoiding the honest debts of the said Bass.  They made other charges to the same effect.

On the trial the plaintiffs read in evidence the patent from the government to A. Zumwalt for the labor sued for ; a deed from Zumwalt to R. H. Bass; the judgment in case of Susan Clark v. R. H. Bass and others ; the petition in same; the execution and levy, and the sheriff's deed to plaintiffs.

The defendant read the patent to Zumwalt; the deed from Zum-

walt to R. H. Bass, and the deed from R. H. Bass and wife to defendant.

The defendant then introduced witnesses, whose testimony tended to prove that the land in controversy was the homestead of R. H. Bass and wife at the time of the sale to the defendant.

The plaintiff introduced rebutting testimony, and then offered to prove by witnesses the allegations contained in the amended petition as to fraud, &c., which was excluded by the court.

The defendant then read in evidence a bond for title to the land in controversy, from R. H. Hester to Edwin Bass, to show that R. H. Bass had no title to the same. The plaintiffs objected to the reading of the bond in evidence, on the ground that it was insufficient to show that the title was in Edwin Bass. Objection overruled and plaintiffs excepted.

The defendant then called Jordan R. Bass, and asked him to state in whom was the title to the labor in controversy. Plaintiffs objected to the testimony, on the ground that it was parol testimony to prove title to land. The court overruled the objection, and permitted the witness to answer, and the plaintiffs excepted to the ruling of the court.

The court confined the jury to the inquiry whether the land in controversy was the homestead of R. H. Bass at the time of the sale from R. H. Bass and wife to defendant; and excluded from their consideration the inquiry as to fraud alleged in the amended petition. Verdict and judgment for defendant. Plaintiffs appealed.

*Harwood & Tevis, W. L. & C. L. Robards*, for appellants.

*Wm. H. Stewart*, for appellee.—1. At the time of the sale of Bass and wife to Trammell, it was the homestead of Bass and wife, as appears from the deed and from the evidence of several witnesses.

2. An insolvent debtor has a right to sell and dispose of his homestead; and such sale, no matter for what purpose made, whether to hinder, or delay, or prevent creditors, is immaterial.

3. The acquisition of another homestead after sale, can not impair the rights of the purchaser of the first homestead.

4. A homestead exemption exists, although the party claiming the benefit of it may live on an adjoining tract.

5. No length of time is necessary to create homestead exemption.

6. It must be borne in mind in this case, that the Zumwalt labor was claimed by Bass and wife as their homestead for years consecutively before and up to the time of their removal, and their removal for but a short or a long time with his family into a small house upon an adjoining tract, could not defeat the homestead, especially as, in this case, he continued his homestead claim, and continuously used and cultivated the Zumwalt labor on and even up to the day of sale to Trammell by Bass and wife.

7. Trammell's purchase was in good faith, without knowledge and for valuable consideration, and held under recorded deed before and at the day of sheriff's sale to plaintiffs. (Wood v. Chambers, 20 Tex. Rep., 248; Gouhenant v. Cockrell, 20 Tex. Rep., 96; Shepherd v. Cassidy, 20 Tex. Rep., 24; Stone v. Darnell, 20 Tex. Rep., 11.)

MOORE, J.—There are several errors presented by the record in this case, for which the judgment must be reversed.

The plaintiffs in the court below placed their right to a recovery of the land described in their petition upon two grounds. First, that a right of homestead upon the land in dispute had never been acquired by Bass, the defendant in execution, and that consequently there was a lien upon it in favor of the plaintiff in execution, older in date and superior in right to that acquired by the defendant Trammell by his deed from Bass. Second, but if the land was in fact Bass' homestead at the date of his deed to Trammell, they alleged that Bass had abandoned it and acquired another homestead long previous to the execution sale, and that the conveyance of the land to Trammell was a sham, and merely colorable to protect it from Bass' creditors.

The judge in the court below evidently regarded the latter

position as affording the plaintiffs no ground for a recovery. The ruling of the court in excluding evidence offered to sustain this position, made the case rest upon the single fact, whether the land was Bass' homestead at the time he conveyed it to Trammell. This court has intimated that even a voluntary conveyance of a homestead might not be regarded fraudulent as to existing creditors. Without on the present occasion stopping to discuss or canvass the correctness of this intimation, it must be remarked that no case is believed to have extended this doctrine to the length that it must be carried to sustain the ruling in this case in the court below. The plaintiffs in their petition charged substantially, that the conveyance to the defendant Trammell was a mere sham, for the fraudulent purpose of protecting and covering the land from Bass' creditors ; and the testimony they offered would have tended to prove this allegation.

The superior title to the land seemed to be still in Bass, (Dunlap v. Wright, 11 Tex., 597,) and it can not be said from the testimony offered, that the jury would have been unwarranted in concluding that in truth the defendant had not even an equitable interest in it. That a debtor can not by fraudulent devices or cunning expedients, retain his property against his creditors after it has been abandoned as a homestead, merely because it was secured to him as such at the time, is much too clear for argument.

Whether the land was in fact the homestead of Bass at the date of his conveyance need not at present be discussed. Unless the evidence was more full and satisfactory, it would be an unprofitable consumption of time to attempt to lay down any rules of law that would probably prove applicable to the case, as it will appear on another trial.

There was also error in permitting the bond from Hester to Edwin Bass to be read for the purpose of proving title in the latter to the land that had been formerly occupied by Richard H. Bass, and which, as the plaintiffs insisted, was his homestead. The bond, indeed, as the case stands, was no evidence of title in any one. Hester was not shown to have had any connection with the land either by title or possession. If it had appeared that R. H. Bass occupied the land under, or by virtue of this title, it

might have gone to the jury. And, from some parts of the statement of facts, it may be inferred that this was the case, but the connection between his possession and this bond was not sufficiently or clearly shown to have made it evidence in the case, and the exceptions to it should have been sustained.

The parol testimony to prove that Edwin Bass owned the land, was also improperly admitted. There was nothing in the case to take it out of the general rule, which requires the title to land to be evidenced by written instruments; and that the best evidence by which a matter is susceptible of proof is alone admissible. The judgment is reversed, and the cause remanded.

Reversed and remanded.