[No. 8,472. Department One.— August 28, 1884.]

THOMAS P. HEATH ET AL., APPELLANTS, *v.* M. C. SCOTT, RESPONDENT.

APPEAL— CONFLICT OF EVIDENCE. — An appellate court will not disturb the verdict of a jury as being contrary to the evidence when there is a substantial conflict of evidence.

EVIDENCE—IMPEACHMENT OF WITNESS. — For the purpose of impeaching a witness, the inquiry is not confined to his reputation for truth and veracity, but may extend to his general reputation for truth, honesty, and integrity.

ID. —DEPOSITIONS — SURPRISE. — When depositions have been taken, the party upon whose application they were taken is not bound to offer them in evidence at the trial, but may resort to other evidence. His failure to use the depositions is not a ground of surprise for which a new trial should be granted.

APPEAL from a judgment of the Superior Court of the county of San Joaquin, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. B. Hall*, for Appellants.

*Terry & McKinne*, for Respondent.

McKEE, J. — This was an action to recover money obtained upon a promissory note given by the defendant on the 9th of October, 1867, payable on demand to the order of the plaintiffs, in the sum of one thousand dollars, with interest at the rate of two per cent per month until paid. The action was commenced on the 23d of March, 1880, thirteen years after maturity of the note; but soon after giving the note, the defendant, upon his own petition, was declared a bankrupt by the United States District Court for the State of California; and on the 23d of October, 1880, by the judgment of said court, he was discharged from all his debts except such as were created by fraud. And the charge is, that the debt for which this note was given, and which was provable, and in fact was proved, filed, and registered in the bankruptcy court as a debt against the estate of the bankrupt, was created by the fraud of the defendant.

Assuming that the complaint contained a sufficient statement of a cause of action, the defendant answered it; and, by his answer, specifically denied the charges of fraud made against him. There was, therefore, but one issue in the case : Was the defendant guilty of fraud in creating the debt for which the promissory note to the plaintiffs was given? If he was not, the action could not be maintained, for the plaintiffs in their complaint alleged and admitted the discharge.

Upon the issue questions were framed and submitted to a jury, answers to which were returned and filed as a special verdict; and a general verdict was also rendered for the defendant. Being dissatisfied with the verdicts, plaintiffs moved for a new trial upon the grounds of insufficiency of the evidence to justify the verdicts, and that they were against law, and on the ground of surprise, and of errors of law in the rulings of the court at the trial.

Both verdicts were rendered upon substantially conflicting testimony as to the nature of the transaction and the conduct of parties to the transaction by which the debt in controversy was created. Of the credibility of the witnesses who testified, and the

weight to be given to the testimony of each of them, the jury were the exclusive judges. Conclusions reached as to the weight of the testimony of each witness, and inferences drawn by the jury from the facts proved by their testimony, and from the conduct of the parties, are not reviewable on appeal. An appellate court does not go behind conclusions and inferences drawn by a jury, for the purpose of examining conflicting testimony and determining its sufficiency or insufficiency to justify a special or general verdict. The presumption is that the evidence was sufficient, and, being sufficient, we must accept the verdict as conclusive of the facts covered by it; and if the conclusion of law be logically drawn from the facts, the decision is not contrary to law; therefore a new trial cannot be granted except for prejudicial errors occurring at the trial, or for surprise, which ordinary prudence could not have guarded against, or for some other of the causes specified in section 657 of the Code of Civil Procedure.

It is urged that the court erred in its rulings at the trial upon an inquiry as to the general character of a witness for the plaintiffs.

In the course of the trial it was proved that the debt in controversy was created to secure a loan of one thousand dollars which defendant obtained from the plaintiffs by certain representations, which, it was charged, were falsely and fraudulently made. One was that Jacob Morss, a responsible party, had promised to sign the promissory note to the plaintiffs, to secure the loan as a co-maker and surety with the defendant. Whether Morss made such a promise to the defendant, therefore, became a material question on the trial of the case. Upon that question the deposition of Morss was read in evidence, and it tended to prove that no such promise had been made. Four or five witnesses, however, gave evidence tending to prove statements by Morss directly contradictory to his testimony, and for the purpose of further discrediting him, a witness was asked this question: "Do you know the general reputation of Morss for truth and integrity in the community in which he resides?" To the question plaintiffs objected: (1) That the witness did not come from nor reside in the neighborhood in which Morss lived. (2) That the question should be limited to general reputation

for truth and veracity.    Both objections were overruled against plaintiffs' exceptions.

Whether an inquiry as to the general character of a witness should be restricted to reputation for truth and veracity is not now an open question.    In *People* v. *Yslas*, 27 Cal. 630, it was held that the inquiry should not be extended beyond those limits.    That case was decided under a rule of law which was at the time regarded as too well settled to be disturbed.    But, after that decision, the legislature enacted as follows: " In any civil or criminal action or proceeding, a witness may be discredited or impeached; and for such purpose his general character for truth, honesty, and integrity may be inquired into." (Stats. 1877-78, p. 193.)    The rule thus enlarged was embodied in the Code of Civil Procedure, sections 1847, 2051.    And it was at the time of the trial, and is now, the law of the subject of inquiry into the general character of a witness for the purpose of impeachment.    There was, therefore, no error in overruling that objection.

As to the other objection, it may be conceded that a witness called to testify in such an inquiry ought, ordinarily, to come from the neighborhood of the person whose character is called in question.    Morss lived in San Luis Obispo County for twelve consecutive years before his deposition was taken, and in San Joaquin County before he moved to San Luis Obispo County, and the witness resided in San Joaquin during Morss' residence there, and also for five months in San Luis Obispo, in the neighborhood of Morss.    Five months' residence in the neighborhood of a person may be sufficient for acquiring a knowledge of the general character of the person.    And if, during such residence, a witness does acquire, from the reports of the character of the person which prevail in the neighborhood, any knowledge whatever, he is qualified to testify. The quality or quantity of such knowledge is not a matter for the court.    If the witness has any knowledge at all, he is entitled to speak, and it is for the jury to determine the value of his testimony.

But plaintiffs claim to have been surprised by the attack upon the character of their witness, because, they say, that after the attorneys of defendant had notified and stipulated with them for

taking despositions and counter-depositions of witnesses in San Luis Obispo County, to be read as evidence upon the subject of inquiry as to the character of Morss, they went to trial without the depositions, and resorted to other testimony for the purpose of impeachment.

Going to trial in a case without depositions which have been taken in it constitutes no legal surprise; for if the depositions have not been transmitted to the court before trial, either party may, if he wants to use them, move for a continuance until they come to hand; or if they have been transmitted, and the party by whom they were taken does not offer them in evidence, the adverse party may offer them or any part of them in evidence. (§ 2034, Code Civ. Proc.) A party taking depositions is not bound to offer them in evidence. He may resort to other testimony, and if he does take that course, and the adverse party is surprised by it, the latter must then and there apply for any relief to which he may be entitled, under the conditions in which he finds himself.

If he does not apply, he will not be entitled to claim the surprise as a ground for setting aside a verdict against him. It is well settled that, if a party claiming to be surprised by the introduction of testimony, fails to apply at the time for a continuance of the cause, or to resort to other testimony, or to ask for any relief to which he might be entitled under the circumstances, his failure is attributable to his own fault, and constitutes no ground of surprise upon which a new trial will be granted. (*Schellhouse* v. *Ball*, 29 Cal. 608; *Turner* v. *Morrison*, 11 Cal. 21; *Delmas* v. *Martin*, 39 Cal. 555, as modified by *Ferrer* v. *Mutual Insurance Company*, 47 Cal. 416.)

There was no error in refusing to give instructions asked by the plaintiffs upon questions which were substantially covered by instructions which the court had previously given to the jury.

Judgment and order affirmed.

ROSS, J., concurring.—Whatever cause of action, if any, there is set out in the complaint, is founded on the alleged fact that the money for which the note was given was obtained by defendant from the plaintiffs by means of false representations,

and upon this question the finding of the jury, upon evidence substantially conflicting, was against the plaintiffs. The objections to the question put to the witness Leets were properly overruled. Conceding that ordinarily a witness must himself have been a resident of the same neighborhood with the person concerning whose reputation he is asked, such requirement was answered in the case of the. witness Leets. Upon the other objection I agree with what is said by Mr. Justice McKee, and I also agree with him in what is said upon the question of the alleged surprise.

McKinstry, J., concurring.—I concur in the conclusions announced by Justices McKee and Ross, and in the judgment. I add that, in my opinion, the complaint does not contain a statement of a cause of action.