[Civ. No. 10160. First Appellate District, Division One.—January 28, 1937.]

ALBERT J. WHITFIELD, Appellant, v. JOE DEBRINCAT, etc., Respondent.

Archibald D. McDougall and Bronson, Bronson & Slaven for Appellant.

John J. Taheny for Respondent.

BRAY, J., *pro tem.*—This is an appeal by plaintiff from an order granting defendant a new trial in an action for personal injuries, after trial before a jury wherein a verdict

for $19,000 was rendered for plaintiff. The order granting the new trial was based "on the sole ground of surprise occurring at the trial, which ordinary prudence could not have guarded against". This was the second trial of this action; the first one resulted in a verdict for $750 in defendant's favor and a new trial was granted on the ground of insufficiency of evidence.

The accident occurred on the Skyline Boulevard on July 8, 1933, at about 8 o'clock P. M., a few miles south of San Francisco. Appellant, an oral surgeon, was proceeding south and respondent was driving north. There is considerable conflict as to how the accident happened, appellant's version of the accident being that respondent's car was on the wrong side of the highway at the time of the impact, and respondent's theory being that appellant was attempting to pass another car and on seeing respondent attempted unsuccessfully to get back on his own side. As a result of the accident appellant sustained various fractures, dislocations and wounds in the left forearm, wrist and hand, and little finger of the left hand. These injuries necessitated considerable hospitalization and several operations, the last operation being an amputation of the little finger and the fifth metacarpal (hand) bone of the left hand.

Appellant introduced testimony to the effect that certain marks on the highway indicated that respondent's car was $3\frac{1}{2}$ or 4 feet on his wrong side of the road. Respondent introduced evidence through his own testimony and that of several of his witnesses that immediately after the accident a certain mark 3 feet long was located on the east (respondent's) side of the highway some 70 feet south of the point of collision, which mark respondent claimed was made by his car and proved him to be on the proper side of the road at the time of the accident, and in this connection he called one Carl H. Stern as a witness. Stern testified that he had visited the scene of the accident in the latter part of October and the early part of November, 1934. Respondent's counsel then asked the witness if when he saw the mark in November, 1934, could he tell "whether it was a fresh mark or an old mark" and the witness replied that he would say "it was a fresh mark"; when asked "how fresh" he replied that he "would not care to make any definite statement", that he "would say a week or so".

Respondent's counsel remarked that the accident in this case happened in July, 1933, and the witness said: "I would not care to say any definite time, but the mark looked like it was not very old." Respondent did nothing to impeach the witness, although Stern's statement to respondent's counsel prior to the trial was to the effect that the mark could have been made in July, 1933, and he was put on the stand by respondent to prove that very fact, or at least to prove that the mark was an old one, and not of recent occurrence. An affidavit was introduced on the motion for new trial in which Stern averred that he must have been confused, that he "intended to give, and thought that he had given, testimony that the mark or gouge, at the time it was first inspected about the end of October, 1934, could have occurred six months, or year, or a year and a half previously".

Appellant contends that the court abused its discretion in granting a new trial for the reasons (1) that respondent, with full knowledge of the facts failed to manifest any surprise or ask for any relief at the time of trial; (2) that the showing of alleged surprise was insufficient to warrant the granting of a new trial on that ground for the reasons that there was no showing that a different result was probable in the event of a new trial, that there was no showing that the verdict was mainly attributable to the matters constituting the alleged surprise, and because respondent makes no attempt to satisfactorily account for the inconsistency of his witness or to explain why he failed to exercise ordinary prudence in guarding against any surprise resulting therefrom.

It is settled that a motion for a new trial is, to a large extent, addressed to the legal discretion of the court to which the application is made and that its action is conclusive and will not be disturbed in the absence of a clear and affirmative showing of a gross, manifest or unmistakable abuse of discretion. (20 Cal. Jur. 27.) Such discretion is very wide and every presumption is indulged in support of the action of the court in passing upon the motion. The discretion must be reasonably exercised to the accomplishment of justice, and where there appears to be a reasonable or even fairly debatable justification therefor, an order granting a new trial will not be set aside, although

a contrary order might not be disapproved or the appellate court might be inclined to take a different view. (20 Cal. Jur. 30.)

Taking all of the circumstances of this case into consideration, it cannot be said that the lower court abused its discretion in granting a new trial upon the ground of surprise arising from the testimony of the witness Stern. The rule is that unless the order is made upon some legal proposition which may be considered in itself, a stronger showing is required to justify this court in interfering with an order granting a new trial than with an order refusing one. (*Cooney* v. *Furlong,* 66 Cal. 520 [6 Pac. 388].) The trial court, after hearing the testimony at the trial and reading the affidavits on the motion for new trial found that defendant was taken by surprise which ordinary prudence could not have guarded against. The testimony of Stern coincided with an intimation contained in an interrogation by appellant's counsel to the effect that the mark was made in another accident alleged to have occurred about a week previous to the first trial and therefore could not have been caused by this accident. Of course, the trial judge is in a better position to weigh the damaging effect of such testimony in relation to the other evidence in the case than is this court. The court's finding as to surprise is supported by the affidavits and must be upheld, unless it can be said that the failure to ask for relief at the trial and the other points raised by appellant require as a matter of law that a new trial be denied.

Appellant contends that the rule is that if a party claiming to be surprised by the introduction of testimony fails to manifest any surprise or ask for any relief at the time of trial he waives his right to claim surprise as a ground for a new trial. In support of this position he cites cases from this and other jurisdictions and particularly *Heath* v. *Scott.* 65 Cal. 548, 552 [4 Pac. 557], and *Schellhous* v. *Ball,* 29 Cal. 605. This undoubtedly is the general rule. However, it appears under the authorities that there are exceptions thereto. As said in *Rodriguez* v. *Comstock,* 24 Cal. 85, 89, ''There are other cases to the effect that the mere fact that the witness of a party swears contrary to the party's expectation does not furnish adequate ground for granting a new trial; but all the cases agree that if the witness

suddenly changes front, by collusion with the party against whom he is called, or fails to testify in accordance with his previous assurances, by reason of any fact or occurrence for which neither the witness nor the party calling him is in any measure responsible, that a new trial will be granted *ex debito justitiae.*''

"It is of no moment, in our judgment, that the defendants did not, at that stage of the trial, move for a continuance; for at that time they did not know, and therefore could have given no assurances to the Court, that a continuance would enable them to retrieve the disaster that had befallen them.'' (*Rodriguez* v. *Comstock, supra,* p. 88.)

The general rule, as set forth in the Schellhous case, *supra,* is referred to in the case of *Delmas* v. *Martin,* 39 Cal. 555, and is distinguished by the court in stating that while this is the general rule, cases may and do frequently arise in which it ought not to be enforced. "The only doubt we entertain on this branch of the case is, whether or not it was incumbent on the defendants, on being surprised by the production of the deed from Black to the plaintiff, to move for a continuance, in order to enable them to bring the necessary rebutting proofs; and having failed to do so, whether they can allege the surprise as a ground for a new trial. The general rule undoubtedly is, that a party surprised on a trial must apply for relief at the earliest practicable moment, and in such method as to produce the least vexation, expense and delay. He will not be allowed to speculate on the chances of a favorable decision on other points, and if he fails on these, fall back on his motion for a new trial on the ground of surprise. (*Schellhous* v. *Ball,* 29 Cal. 609.) But while this is the general rule, cases may and do frequently arise in which it ought not to be enforced. In *Rodriguez* v. *Comstock,* 24 Cal. 85, it was considerably relaxed in favor of a party who was deceived by his own witness in respect to the facts to which he would testify, and who failed to move for a continuance. But, in relaxing the rule, it should be done only where the surprise is clearly established, and the consequences of it can be avoided on another trial; and it must also be apparent that the party has not been guilty of laches, and has acted in good faith in omitting to apply for relief at an earlier stage in the proceedings. In this case, the deed

from Black to the plaintiff was the last evidence offered in the cause, and the court immediately proceeded to charge the jury. It may well be, that in the last stage of a jury trial, at the conclusion of the evidence, sufficient opportunity may not have occurred to enable the defendants and their counsel to decide, deliberately and discreetly, what course it was proper to pursue in respect to the last item of proof which was offered in the cause. We perceive nothing in the record to justify the belief that the defendants and their counsel were not acting in good faith in omitting to apply for a continuance, and are satisfied that they were guilty of no laches; that they were surprised, in the sense of the statute, by the deed from Black to the plaintiff, and that they can probably overcome the effect of that deed, if allowed an opportunity to do so. We think this is a proper case in which to relax somewhat the rule to which we have reverted.''

The many outside cases cited by appellant do not conflict with our ruling herein. At most they support the general rule, which as heretofore shown is subject to exceptions and in many instances their decisions are based upon failure to comply with technical statutory requirements. Moreover, as said in *Tyler* v. *Hoornbeck*, 48 Barb. (N. Y.) 197, the defendant should not ''be remediless because he has made a mistake and failed to avail himself of a technical rule of practice. It is quite common to grant relief under such circumstances as are here presented, *when justice demands it. In cases like this, no precise rule can be laid down which can always be invoked.* The decision of them must, of necessity, be left somewhat to the discretion of the Court where the trial is had.'' (Italics ours.) In this case the lower court has held that justice demands a new trial and while it may be that a difference of opinion upon this question might be proper, it cannot be said that the circumstances afford no foundation for the court's conclusion.

''Where a party has used reasonable diligence to ascertain what his witness will testify to, and has reasonable grounds to believe that the witness will testify to a certain state of facts, and relies upon his doing so, and he does not do so, and the case is lost in consequence, a new trial will be granted.'' (Hayne on New Trial and Appeal, p. 382; *Delmas* v. *Margo*, 25 Tex. 1 [78 Am. Dec. 516].)

Even the Schellhous case, *supra,* so strongly relied upon by appellant, qualifies the rule requiring the necessity for immediate action in case of surprise by the limitation that the party claiming relief must do so at the earliest opportunity *"if he can relieve himself from his embarrassment in any mode, either by a nonsuit or a continuance, or the introduction of testimony, or otherwise".* (Italics ours.) The court here held, in effect, that none of these modes would have adequately met the situation and thus even under the Schellhous ruling respondent is not precluded from raising for the first time the question of surprise upon his application for a new trial. The lower court evidently felt, from its familiarity with the case, that Stern's testimony created an effect which nothing could obviate and that as said by respondent, ''the bell had been rung and it could not be unrung''. It cannot now be said, from a complete examination of the entire record in the case, that the court's conclusion in this respect is unwarranted.

In neither the Schellhous case nor *Heath* v. *Scott, supra,* was there a situation where a party's own witness had testified contrary to what the party expected and had reason to expect, when he was placed on the stand as was the case here. Every case is entitled to be tried upon the merits in order that impartial justice may be done, and where a court feels it necessary in order to accomplish this result, that a new trial be had, the appellate court can only set aside the lower court's action where manifest abuse of discretion has occurred and this cannot be said under the facts in this case.

The trial judge is in the better position to determine whether there were any practicable steps which counsel should reasonably have been required to take at the trial and which would have effaced the disastrous effect of the testimony. The lower court, by its action, found, in effect, that the defendant could have done nothing in this respect. Stern's testimony agreed with the wholly unsupported intimation by the plaintiff's counsel that there had been another accident at the same place. A continuance probably would have been futile under the circumstances. An attempt at impeachment might only have made matters worse. Such testimony, coming from one of the defendant's own witnesses under such circumstances could have and probably undermined

whatever reliance the jury may have had in the defense. Even had the witness upon further questioning changed his position and testified to the matters which he had stated to counsel before the trial and which he set forth in the affidavit for a new trial, the jury would probably have taken that portion of his testimony which was against the party calling him, and his actions would still have been damaging to the defense. At least, it cannot be said that the court's conclusion in this respect is so far erroneous that the appellate court can say that the court's action amounted to an abuse of discretion or that such conclusion is completely unreasonable.

■ Appellant contends that as a matter of law the show-ing of surprise by respondent was insufficient and his first ground therefor is that it was not shown that a different result was probable in the event of a new trial. The lower court apparently believed that a different result might have been reached, and we cannot say that this conclusion was wholly unfounded. There had been intimated to the jury that the mark upon the highway, which defendant claimed proved his position at the time of the accident, was made in a later accident. The witness Stern, after having told the respondent's attorney that the mark at the time he saw it was an old mark, testified to the contrary upon the stand. In a new trial Stern would testify as he originally stated the matter to the attorney. Even if Stern were not called as a witness upon a new trial, defendant's case would be in much better shape than it was when Stern testified against him. Appellant states that Stern's testimony as to the age of the mark would be inadmissible as calling for a mere conclusion. That is probably true. However, the testimony was admitted at the previous trial without objection and it undoubtedly had considerable weight with the jury. On a new trial, if objection were made, the witness could only testify to the physical condition of the mark as he saw it and leave it for the jury to conclude what its age might be. While the rule is, as set forth in *Brooks* v. *Douglass,* 32 Cal. 208, 211, and *McGuire* v. *Drew,* 83 Cal. 225, 230 [23 Pac. 312], and other cases, that the one seeking relief upon the grounds of surprise must show what case he can establish in the event of a new trial and that a different result would be reached, favorable to him, it cannot

be said in the case at bar that the lower court manifestly abused its discretion in holding that such a showing was made.

■ The second ground urged by appellant upon the legal insufficiency of the showing upon the motion for a new trial, is that it was not shown that the verdict was mainly attributable to the matters constituting the alleged surprise. Here again the court found adversely to the appellant and it cannot be said that there was a complete absence of justification therefor. The fact that Stern's testimony can reasonably be presumed to have greatly affected the jury's determination is indicated by the very weight placed upon it by the appellant in that it was the only testimony read by him to the jury. Of course, appellant was well within his rights in so doing, but the fact that it was the only testimony which he felt needed to be emphasized to the extent of reading it in his argument is strongly indicative of the weight or influence it must undoubtedly have had upon the jury. Six jurors made affidavits to the effect that the jury considered the testimony of Stern as very damaging to the defendant and influenced the jury to decide that the mark had been caused in another accident than the one involved in the case. Of these jurors, three made later affidavits to the effect that they did not base their verdicts upon the testimony of Stern and would have voted the same regardless of his testimony. Six other jurors made affidavits to this same effect. If these affidavits can be considered at all upon the questions here involved, they are not very helpful, as three jurors say unequivocally they were influenced in their verdicts by Stern's testimony, six say that they were not, and three say they were and then say they were not. In determining this question, then, this court must consider the reasonable probability of the effect of this testimony under all the circumstances of the case and doing so we cannot say that it was not mainly responsible for the verdict.

■ Appellant for his third point claims that respondent makes no attempt to account for the alleged inconsistency of his witness, nor to explain why he failed to exercise ordinary prudence in guarding against any surprise resulting therefrom. According to the affidavits upon which the lower court based its action, respondent had interviewed the wit-

ness Stern before he came into court. There was nothing from this interview or at any time until he had actually told on the witness stand a different story, which gave respondent any intimation that Stern would testify differently than as previously related. Neither ordinary nor extraordinary prudence could have guarded against this change of front of the witness without warning. The witness claims as his reason for his actions that he became confused, but whether this is so or not, the net result to respondent was testimony which he neither expected nor could have reasonably anticipated.

Respondent need only show that the reason for the change in testimony is not chargeable to him, and having done that, he need go no farther in this regard. In this case respondent did show that he was in no way responsible or prepared for the actions of the witness and even went farther and showed that the witness' explanation therefor was that he was confused. The law does not require respondent to go further in this behalf.

In view of our decision that the motion for new trial was properly granted, upon the grounds of surprise, it becomes unnecessary to consider the other questions raised by respondent upon this appeal.

Order granting new trial affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 29, 1937.